GUSSIE WALTER, Respondent, v. J. J. DENNEHY, Appellant.

St. Louis Court of Appeals, March 1, 1902.

Damages: LIABILITY. OF SUBTENANT. In the case at bar, if the defendant has sublet the upper story of the premises to his subtenant and she was occupying it as his tenant and used the roof of the shed by consent of the owner for the purpose of drying her clothes and put the chair on the roof of the shed for her own private use, and the chair in falling from the roof injured plaintiff, she alone was liable for the injury to plaintiff as the condition of the premises from which the injury resulted was brought about by her agency alone and while she was occupying the premises as subtenant.

Appeal from St. Louis City Circuit Court.—*Hon. Walter B. Douglas*, Judge.

REVERSED AND REMANDED.

*Dodge & Mulvihill* for appellant.

(1) It is error on the part of the trial court to submit to the jury an issue of fact, concerning which no allegation was made in the pleadings; the trial issues must be within the paper issues. Ferguson v. Thornton, 68 Mo. 468; Kennedy v. Railroad, 70 Mo. 252; Melvin v. Railroad, 89 Mo. 106. No damages can be allowed for future suffering, except such as are shown by the proof to be certain. Rose v. Kansas City, 48 Mo. App. 440; Biglow v. Railroad, 48 Mo. App. 367. (2) A party is precluded from making proof of matter not pleaded and having an instruction thereon. Halpin Mfg. Co. v. School Dist., 54 Mo. App. 371. (3) As between causes which precede the proximate cause, the law can not select one rather than another, as that to which the final consequence shall be attributed, and it stops at the proximate cause; because to go back of it would be to enter upon an investigation, which would be both endless and useless. Lewis v. Railroad, 54 Mich. 66; McCary v. Railroad, 3 Neb. 54; Daniels v. Bannatine, 23 Ohio St. 532. (4) If the negligence complained of is only the remote cause of the accident, or if the act alleged to amount to negligence only consists of a failure to provide full and efficient safeguards against violent and extraordinary winds, storms, rains, etc., this will not be held to constitute grounds of liability. Collier v. Valentine, 11 Mo. 299.

*Stern & Haberman* for respondent.

(1) The court did not err in refusing to grant defendant's instructions, in the nature of a demurrer to the evidence

·offered at the close of the plaintiff's case.    Jansen v. Mutual
Reserve Fund Assn., 148 Mo. 16; Cohn v. Kansas City, 108
Mo. 387.    (2)   An unusual object falling from an unusual
place, unexplained, constitutes prima facie negligence.    This
is the doctrine of *res ipsa loquitur.*    Vincent v. Cook, 4 Hun
318; Mullen v. St. John, 57 N. Y. 567; Olsen v. Railroad,
152 Mo. 426.   Where the act of God enters into and combines
with the negligence of the defendant, the defendant is liable
for the damage sustained by one exercising ordinary care.
Wolf v. Express Co., 43 Mo. 425; Haney v. Kansas City, 94
Mo. 334.    (3)   Where there is a direct conflict in the evi-
dence, the finding of the jury is conclusive, and will not be
disturbed on appeal.    (4)    Future pain and suffering are
proper elements of damage, and instructions based upon evi-
dence of the same are correct.    Rose v. Kansas City, 48 Mo.
App. 440; Biglow v. Railroad, 48 Mo. App. 367.

BLAND, P. J.—This is a personal injury case taken
from a justice's court of the city of St. Louis by appeal to
the circuit court where, upon a retrial, plaintiff recovered judg-
ment for five hundred dollars, which was reduced to two
hundred and fifty dollars by a remittitur entered by plaintiff
to avoid a new trial.

In respect to the injury, plaintiff testified as follows:

"On the twenty-third of August, about five o'clock in the
evening, I was going home from my work; I walked up Wash-
ington avenue to Nineteenth street; I was going along Nine-
teenth street, on the west side of the street; I seen a storm
coming up and I hurried; when I got as far as where Mr.
Dennehy's shed is I felt something very heavy fall on my
head; I was knocked down unconscious and stunned; when I
came to I looked around and I saw that an old rocking chair
had struck me; my head was cut and bleeding; my nose was
cut, my eyes were swollen and blackened, my chest was swollen
and discolored from the weight of the chair; I went into one

of the neighboring houses and had the folks attend to my bruises."

Other witnesses, who saw the accident, testified that plaintiff was not knocked down by the chair but that it fell upon her head; that she threw it off, adjusted her bonnet and walked into a near-by house. In regard to the extent of the injury the evidence tends to prove that plaintiff's forehead and chest were bruised and that she was treated by a physician from August 23, 1900 (the day of the accident), until the twenty-ninth day of October following, continuously, and at intervals after that date down to the day of the trial; that as a result of the injury she had obstinate headaches; that prior to the injury she was able to earn at her occupation (sewing) nine dollars a week; that since the injury, on account of her headaches, she was not able to earn more than from five to five and a half dollars per week.

Plaintiff's evidence tends to prove that defendant rented No. 1901, on O'Fallon street; that a barber rented No. 1903 adjoining. There was a shed about forty-two feet long and twenty-two feet wide in the rear of these houses and on the same lot built flush with Nineteenth street. The shed was rented in connection with the buildings in front. It was a one-story shed and had a flat gravel roof. From the second floor of No. 1901 there was a bridge or passway from a porch to the shed. The occupants of the second story of No. 1901 had a clothesline on the roof of the shed and were in the habit of drying their clothes on this line. The defendant occupied the first story of No. 1901 with a stock of groceries, and used a part of the shed in the rear of this building for the storage of coal, etc. The barber who occupied No. 1903 used that portion of the shed in his rear for the same purpose, but did not use any portion of the roof. The rocking chair, which blew off of the shed and injured plaintiff, had been on the roof for several months. All the premises of No. 1901 were rented by the defendant, of the owner, to whom he paid

Walter v. Dennehy.

all the rent. Defendant was unmarried. The second story of the building was occupied by his unmarried sister and his mother. His sister kept a few boarders and defendant claimed to be one of them. The sister testified that she placed the rocking chair on the roof of the shed and that it was her chair and that she owned all the furniture in the house and conducted the boarding business on her own account. One of her boarders, an employee of the defendant, testified that about a week or ten days before the accident he tied the chair with a wire to a post near the center of the roof.

Defendant's evidence was that on the day of the accident there was a very high wind; that it was so strong that it broke two rungs out of the chair where it was tied and carried it into the street.

In rebuttal to this evidence the plaintiff produced two witnesses who testified that the chair had been sitting near the edge of the roof unsecured for two or three days before the accident.

In respect to the velocity of the wind, Dr. Hyatt, the official weather forecaster for St. Louis, testified that the velocity of the wind at about five or five-thirty p. m. on the day of the accident was fifty-nine miles for a minute or two and that the maximum for five minutes or more was forty-seven miles an hour; that the normal velocity of the wind in the locality of St. Louis for the month of August is from seven to eight miles an hour; that any wind over forty miles an hour is considered a high wind, a gale, but that there was nothing extraordinary in the velocity of the wind on that day; that such gales are frequent in St. Louis in the summer season.

During the examination of defendant the following occurred:

"Q. I will ask you to state who occupied the premises upstairs? A. My sister, sir.

"Q. For what purpose?

"Mr. Haberman: We object to that; the fact that the

defendant may allow other persons to use a portion of his building doesn't excuse him in a suit of this kind at all. He rents the whole place and he is responsible for its condition, and can not escape liability by letting out a portion of the building to one person and a portion to another.

"Mr. Mulvihill: In this instance we desire to show that the upper portion of this building, 1901, was not occupied at the time Mr. Denehy moved in downstairs. On the contrary he put up signs 'For Rent' and that two or three months later the premises were sublet, and with the knowledge of the landlord, the defendant in this case would have a perfect right to sublet the upper floor, and if he did he divested himself of control over it.

"The Court: Is it your purpose to show that the control of the shed was sublet to somebody else?

"Mr. Mulvihill: No; that is not the theory of our defense, but we contend that up to the present time there is no evidence to show where the chair came from except that it was on the top of the shed, and we contend that this shed was not under the exclusive control of the defendant.

"The court sustains the objection; to which ruling of the court, defendant, by counsel, then and there duly excepted."

The exclusion of this evidence was error, for if the defendant had sublet the upper story of the premises to his sister and she was occupying it as his tenant and used the roof of the shed by consent of the owner for the purpose of drying her clothes and put the chair on the roof of the shed for her own private use, as she as a witness for defendant testified she did, she alone was liable for the injury, as the condition of the premises from which the injury resulted was brought about by her agency alone and while she was occupying the premises as a subtenant. Eyre v. Jordan, 111 Mo. 424; Stoetzle v. Swearingen, No. 8252, decided at this term. For this error the judgment is reversed and the cause remanded. *Barclay*, and *Goode, JJ.*, concur.